**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LESLEY MARLIN SCHOLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-1003 (RMC) |
| | ) | |
| VARIOUS AGENCIES OF THE | ) | |
| FEDERAL GOVERNMENT AND | ) | |
| PROJECT DISARM TASK FORCE | ) | |
| ENTITIES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Lesley Marlin Scholl is a federal prisoner who has brought suit under the Freedom of Information Act and the Privacy Act against "various agencies of the federal government and Project Disarm Task Force Entities." Compl. Caption. Pending is a motion to dismiss or for summary judgment brought on behalf of all Agency Defendants discerned from the complaint except the Federal Bureau of Investigation, which has moved separately for the same dispositive relief [Dkt. 33]. The motion [Dkt. 27] of the Agency Defendants is supported by declarations from the Executive Office for United States Attorneys, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives – all components of the Department of Justice – and from U.S. Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security.[1] The record establishes that as a condition

---

[1]     The caption to the Complaint does not identify the agencies Mr. Scholl sues but counsel for the Defendant Agencies has relied on Mr. Scholl's "mention[] [of] four federal agencies and fifteen agency components" to identify the Agency Defendants in this action. Mem. of P. & A. at 2 [Dkt. 27]. Mr. Scholl has raised no objection to this list of party-defendants, which also includes the United States Marshals Service, the Internal Revenue Service, the Department of theTreasury, and

of two plea agreements, Mr. Scholl waived his right to obtain the requested records under FOIA

and the Privacy Act. Consequently, the Court will grant summary judgment to all Defendants, as

explained more fully below.

## I. BACKGROUND

### A. Plea Agreements

In July 2009, Mr. Scholl, with the assistance of counsel, pled guilty in two

separate cases in the United States District Court for the Northern District of Indiana to the

illegal transfer of a silencer and illegal possession of machine guns (Count 2 of a three-count

indictment). The plea agreements were identical and included the following provision:

> The defendant hereby waives all rights, whether asserted directly or
> through a representative, to request or receive from the United States
> any further records, reports, or documents pertaining to the
> investigation or prosecution of this matter. This waiver includes,
> but is not limited to, rights conferred by the Freedom of Information
> Act and the Privacy Act of 1974. Further, the defendant
> acknowledges that he has received all discovery required by law
> prior to the entry of his plea and that he has reviewed same with his
> attorney.

Gov't's Exs. 1 and 2, ¶ 9(k) [Dkt. 27-2] ("Waiver Provision"). He was sentenced on October 9,

2009, to serve fifteen years in prison. The reason for Mr. Scholl's plethora of record requests

under the Freedom of Information (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. §

552a, is his insistence that he is actually innocent of the crimes to which he pled guilty.

### B. FOIA Requests

On January 13, 2010, Mr. Scholl submitted a FOIA request to the Executive

Office of the United States Attorneys (EOUSA), the Drug Enforcement Agency (DEA), the

---

the Office of Government Information Services within the National Archives and Records
Administration. Mem. of P. & A. at 1.

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and the United States Attorney

General, which sought:

> release and disclosure of any and all Reports, Records, Indexes, FBI 302 Reports, DEA 6 Reports, Investigative Reports, Statements, Recordings, Sprint Reports, Note Book and Log Book entries, Surveillance Reports, Docket Reports, Witness or Subject Statements, Agreements, Stipulations, and other related documents wherein Lesley Marlin Scholl . . . is the subject, target interested party, or is mentioned in any capacity.

Gov't's SMF ¶ 8 [Dkt. 27-1]; FBI's SMF ¶ 8 [Dkt. 33-2].

On November 28, 2011, Mr. Scholl submitted a second FOIA request to EOUSA,

DEA, ATF, and the Office of Information Policy (OIP) in the Department of Justice (DOJ)

which sought "ALL records pertaining to the individual named," including but not limited to:

> the compiled file containing (1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants, and/or detainers, (5) final and closing investigation reports; and (6) any and/or all information, data or reports not otherwise exempt by statute.

Decl. of David Luczynski, Ex. I [Dkt. 27-3]; Decl. of Katherine L. Myrick, Ex. D [Dkt. 27-4];

Decl. of Stephanie M. Boucher, Ex. O [Dkt. # 27-5] (capitalization in original).

## 1. EOUSA's Response

In response to Mr. Scholl's January 2010 request, EOUSA created two separate

files: it assigned number 2010-219 to the request for EOUSA records and number 2010-220 to

the request for FBI and DEA records. On February 24, 2010, EOUSA informed Mr. Scholl that

it had referred the latter request to the FBI and DEA for the respective component to process and

provide a response directly to him. On May 26, 2010, EOUSA denied request number 2010-219

based on the Waiver Provision. On August 24, 2010, Mr. Scholl appealed EOUSA's decision to

OIP, which dismissed the appeal as untimely.

In response to Mr. Scholl's November 2011 request, EOUSA again denied the request, by letter dated July 10, 2012, due to the Waiver Provision.   OIP affirmed that decision on February 25, 2013.

## 2. DEA's Response

In response to Mr. Scholl's January 2010 request, DEA searched its Investigative Reporting and Filing Systems, utilizing Mr. Scholl's name, date of birth, and social security number.   On November 2, 2010, DEA informed Mr. Scholl that it had located no responsive records.   DEA repeated the search upon receiving Mr. Scholl's November 2011 request and again sent him a no-records response on December 15, 2011.

## 3. ATF's Response

Because Mr. Scholl's initial request to ATF was improperly addressed, ATF's Disclosure Division did not receive the January 2010 request until October 19, 2010, when it received notification from OIP.   ATF's search by Mr. Scholl's personal identifiers indicated that any responsive records were likely to be found in its Fort Wayne Field Office in the Columbus Field Division.   Upon learning from the Columbus Field Division that Mr. Scholl's criminal case remained open, ATF informed Mr. Scholl on November 4, 2010, that it was denying his request under FOIA Exemption 7(A), codified at 5 U.S.C. § 552(b) (generally shielding from release "records or information compiled for law enforcement purposes").   In addition to advising Mr. Scholl about his appeal rights, ATF invited him to submit a new request in six to eight weeks.

In response to Mr. Scholl's November 28, 2011 request, ATF searched the files at its Fort Wayne Field Office and located responsive records that "fall squarely" within the Waiver Provision.   Decl. of Stephanie M. Boucher ¶ 38 [Dkt. 27-5].   By letter dated April 16, 2012, ATF informed Mr. Scholl that it could not process his request.

In October and November of 2011, "ATF received two requests from Mr. Scholl seeking records concerning 'Project Disarm,'" which was the task force that had investigated Mr. Scholl and resulted in his criminal prosecution. Gov't's SMF ¶¶ 35-36. One FOIA request was referred to ATF by EOUSA; the other came directly from Mr. Scholl. ATF conducted a key word search, utilizing "Project Disarm." That search located six cases that "relat[ed] to specific defendants [but they] did not reference Mr. Scholl[.]" Boucher Decl. ¶ 17. Because Mr. Scholl's request was generally worded, ATF could not determine "if any of the six returned cases were responsive to his request." *Id*. Consequently, ATF sent a no-records response to Mr. Scholl on December 19, 2011, stating: "This is not a denial; rather it is to advise you that based on the information you provided, we were unable to locate responsive records." Boucher Decl., Ex. K. The letter also informed Mr. Scholl about his right to appeal administratively. In an undated and unsigned letter, OIP may have affirmed ATF's decision on the modified ground that Mr. Scholl had waived his FOIA rights to these kinds of records in the Waiver Provision. *Id*., Ex. N.

### 4. ICE'S Response

On December 22, 2011, Mr. Scholl submitted a FOIA request to Immigration and Customs Enforcement (ICE), seeking the same investigatory records sought in his November 28, 2011 request to ATF. On January 12, 2012, ICE issued a no-records response and advised Mr. Scholl that he had a right to appeal the determination within sixty days from the date of the letter. "A thorough search of ICE FOIA's systems and records" located no administrative appeal from Mr. Scholl. Decl. of Catrina Pavlik-Keenan ¶ 9 [Dkt. 27-6].

### 5. FBI's Response

The Attorney General routed Mr. Scholl's January 2010 FOIA request to the Federal Bureau of Investigation (FBI). On March 22, 2010, the FBI informed Mr. Scholl that it

could not process the request because of the Waiver Provision in his plea agreements. On January 24, 2011, OIP dismissed Mr. Scholl's appeal dated August 24, 2010, as untimely.

OIP routed Mr. Scholl's November 28, 2011 request to the FBI. On December 20, 2011, the FBI cited the Waiver Provision and denied that request as well.

On January 25, 2012, Mr. Scholl submitted a FOIA request directly to the FBI, seeking records pertaining to him; on January 30, 2012, he submitted another request for records pertaining to a specific interview with the FBI. The FBI determined that any responsive records were covered by the Waiver Provision and so informed Mr. Scholl. On March 20, 2012, OIP affirmed the FBI's decision.

On December 19, 2011, Mr. Scholl submitted the following request pertaining to Project Disarm to the FBI:

> mission statement / definitive goals / scope of authority / funding . . . date of operations / prosecutions . . . tactics and techniques . . . [and] use of non-governmental personnel such as [confidential informants (Cis)] to achieve stated goals, specifically detailing the latitude in which CIs are to be provided/reports (sic) of unlawful CI and any other non-governmental personnel activities.

FBI's SMF ¶ 20. On March 7, 2012, the FBI informed Mr. Scholl that it had searched its Central Records System but was "unable to identify main file records responsive to the FOIA" request. Decl. of David M. Hardy, Ex. C-3 [Dkt. 33-3]. OIP affirmed that decision on September 7, 2012, but added that Mr. Scholl could request "a search for cross references" so long as he "provide[d] information sufficient to enable the FBI to determine with certainty that any cross-references it locates are identifiable to the subject of your request." Pl's Ex. B-3 [Dkt. 1-1, ECF p. 18]. Neither party has pointed to any place in the record showing that Mr. Scholl submitted such a request to the FBI.

During the course of this litigation, "the FBI located . . . cross-references to the plaintiff with an investigative file concerning a matter unrelated to plaintiff," and it determined that those records "were not subject to the waiver in plaintiff's plea agreement[.]" Hardy Decl. ¶ 30. Thus, on September 28, 2015, the FBI informed Mr. Scholl that it had reviewed 85 pages of "cross-references records," and it released 69 of those pages to him in full or in part. *Id*. ¶ 20. The FBI withheld information under FOIA Exemptions 1 (classified information); 3 (specifically exempted from disclosure by statute); 5 (inter-agency or intra-agency communications not subject to disclosure in civil litigation); 6 (personnel and medical files); 7(C) (unwarranted invasion of personal privacy); 7(D) (confidential source); and 7(E) (law enforcement techniques or procedures). The FBI also cited Privacy Act Exemption (j)(2), codified at 5 U.S.C. § 552a(j)(2)(enforcement of criminal laws). The release letter further informed Mr. Scholl that "[a]lthough this matter is in litigation," he had a right to appeal the determination to OIP within 60 days from the date of the letter [Dkt. 33-3, ECF p. 90].

## 6. U.S. Marshals Service

Mr. Scholl alleges that the United States Marshals Service released records "without condition (*e.g.*, waiver)," and that "one page was withheld as exempt, allowing appeal to OIP. None was taken." Compl. at 7.

## 7. Department of Treasury

Mr. Scholl alleges that "requests to [Treasury] were taken in the interests of financial resources involved off the use of Informants and the Project Disarm Task Force involving multiple agencies." Compl. at 7 ¶ 22. Although Mr. Scholl alleges that Treasury referred his request to the IRS, Financial Crimes Enforcement Network, Consumer Financial Protection Bureau and Treasury Inspector General for Tax Administration, the corresponding

exhibit is not a letter of referral but rather is a list of FOIA/PA Offices (and contact information) within the Department.

## 8. IRS

An attachment to the Complaint shows that the IRS closed Mr. Scholl's FOIA request seeking the same arrest and investigatory records listed in the November 28, 2011 request to ATF upon determining that he was "asking for documents that are not Internal Revenue Service records." Jan. 17, 2012 Letter [Dkt. 1-1 at ECF p. 26].

## 9. Office of Government Information Services (OGIS)

Mr. Scholl alleges that he wrote "numerous letters" to the Office of Government Information Services (OGIS), a component of the National Archives and Records Administration, and was informed by letter of August 2, 2012, that "we will get back to you." Compl. at 9. In a letter attached to the Complaint, however, OGIS explained that it was created "to complement existing FOIA practice and procedure," but it "does not process requests or review appeals." Aug. 2, 2012 Letter [Dkt. 1-1 at ECF p. 30]. In addition OGIS has no "investigatory or enforcement power" or authority to "compel an agency to release documents." *Id*. Rather, it "serves as the Federal FOIA Ombudsman and its jurisdiction is limited to assisting with the FOIA process." *Id*.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court must

assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not accept a plaintiff's inferences if they are not supported by the facts set out in the complaint, *see Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), and a court need not accept as true a plaintiff's legal conclusions, *see Iqbal*, 556 U.S. at 678. In deciding a motion under Rule 12(b)(6), a court may consider the complaint's factual allegations, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows [through facts supported in the record] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This procedural device is not a "disfavored legal shortcut" but a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The FOIA confers jurisdiction on the district court to enjoin an agency from improperly withholding records maintained or controlled by the agency. *See* 5 U.S.C. § 552(a)(4)(B); *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)); *Lazaridis v. Dep't of Justice*, 713 F. Supp. 2d 64, 66 (D.D.C. 2010). Summary judgment is the frequent vehicle for resolution of a FOIA action because the pleadings and declarations in such cases often provide undisputed facts on which the moving parties are entitled to judgment as a matter of law. *McLaughlin v. U.S. Dep't of Justice*, 530 F. Supp. 2d 210, 212 (D.D.C. 2008) (citations omitted). Agencies may rely

on affidavits or declarations of government officials, as long as they are sufficiently clear and detailed and submitted in good faith. *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The Court may award summary judgment solely on the basis of information provided in agency affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974); *Marshall v. FBI*, 802 F. Supp. 2d 125, 131 (D.D.C. 2011). However, the Court must "construe FOIA exemptions narrowly in favor of disclosure." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).

### III. ANALYSIS

#### A.  Failure to State a Claim

The Court hereby grants the Agency Defendants' motion to dismiss the claims against the Marshals Service, the IRS, Treasury, and OGIS. Mr. Scholl has not alleged improper withholdings by those defendants, and he admits in his Complaint that he chose not to pursue his administrative remedies with regard to the withholdings by the Marshals Service.

#### B.  Waiver of FOIA/PA Rights

The Court of Appeals has stated that "in the absence of an affirmative indication that Congress intended to preclude or to limit the waiver of statutory protections . . . , voluntary agreements to waive these protections are presumptively enforceable." *United States v. Burch*, 156 F.3d 1315, 1321 (D.C. Cir. 1998) (citing *United States v. Mezzanatto*, 513 U.S. 196 (1995)). And "several courts have held that a FOIA/PA waiver in a criminal defendant's plea agreement

may be enforced against the criminal defendant." *Ebling v. U.S. Dep't of Justice*, 796 F. Supp. 2d 52, 63 (D.D.C. 2011) (citing *Caston v. Exec. Office for U.S. Attorneys*, 572 F. Supp. 2d 125, 129 (D.D.C. 2008) (other citations omitted); *see Thyer v. U.S. Dep't of Justice*, No. 12-0606 2013 WL 140244, at *4 (D.D.C. Jan. 11, 2013) (granting defendant's motion "on the ground that plaintiff's FOIA claim is barred under the terms of her plea agreement") (citing other cases so holding).

As the Eighth Circuit has observed, "given that the Supreme Court has allowed a [criminal] defendant to waive constitutional rights, we would be hard-pressed to find a reason to prohibit a defendant from waiving a purely statutory right." *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003). This Court agrees, and finds that by the terms of his two plea agreements, Mr. Scholl knowingly waived his "rights conferred by the Freedom of Information Act and the Privacy Act of 1974" as to all "records, reports, or documents pertaining to the investigation or prosecution" of his criminal cases. It is clear from the otherwise convoluted allegations in the Complaint that any records responsive to the requests at issue pertain to Mr. Scholl's convictions.[2] The following observations inform the Court's conclusion.

1) The only named Defendant in the caption of the Complaint is the Project Disarm Task Force, which investigated the criminal activity.

---

[2] According to the FBI's declarant, the records released voluntarily during the course of this litigation consisted of "cross-references . . . concerning a matter *unrelated to plaintiff*." Hardy Decl. ¶ 30 (emphasis added). A cross-reference "pertains to records that merely mention or reference an individual . . . that is contained in a 'main' file record about a different subject matter." *Id*. n.5. The FBI's release appears to be beyond the scope of this litigation. Nevertheless, Mr. Scholl does not state whether he appealed the decision to OIP as per the advisements given in the release letter, nor has he moved to supplement his Complaint. "[A]s a jurisprudential doctrine," failure to exhaust a claim generally precludes judicial review. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004); *see Bayala v. United States Dep't of Homeland Sec., Office of Gen. Counsel*, 827 F.3d 31, 35 (D.C. Cir. 2016) ("Exhaustion . . . can be a substantive ground for rejecting a FOIA claim in litigation."). Consequently, the Court hereby dismisses any claim arising from the FBI's September 28, 2015 release of cross-reference records.

2)  The caption lists two "Ancillary Criminal" case numbers that correspond to Mr. Scholl's criminal cases in the Northern District of Indiana.

3)  Mr. Scholl introduces the Complaint as seeking redress for the following:

> deliberate indifferences of task force agencies using arbitrary and capricious administrative process designed to avoid accountability to their own rule of law of[] a wrongful prosecution and imprisonment of medical doctor . . . without predisposition to any crime or illegalities and thus actually innocent yet presumed guilty of some crime(s) based on overzealous federal prosecutors . . . outrageous governmental conduct, entrapment . . . so as to further their 'warehousing' political agenda of the day in favor of an expanded legal law enforcement growth industry . . . as alleged deterrent value on society (guns) under their additional-illustrious Project Disarm Task Force, designed to justify Seizures, Takings and convictions in violation of constitutional process, protections, property rights, privileges and immunities.

Compl. at 1.

4)  In his Statement of the Case, Mr. Scholl refers to himself as "redressor-criminal defendant, federal prisoner (political)," recounts the circumstances allegedly leading to his criminal prosecution, and proclaims that he "is actually innocent of any and all charges based on an orchestrated miscarriage and thus travesty of justice engineered by the government's informant for his own financial gain to benefit the Project Disarm Task Force's political agenda of relieving society of any and all guns, legal or illegal." *Id.* at 2-5.

5)  Notwithstanding his acknowledgment in the plea agreements that "he has received all discovery required by law prior to the entry of his plea and that he has reviewed same with his attorney," Mr. Scholl's "Claim" is captioned: "Arbitrary and Capricious Administrative Process in Withholding Information Relevant to Actual Innocence and Miscarriage of Justice by Federal Agencies and Project Disarm Task Force." Compl. at 6.

6)  Mr. Scholl's Relief section reads as follows:

> The government has orchestrated a wrongful conviction and thus imprisonment utilizing informants so as to switch the burden of proof to their target who from their federal prison without counsel, process and financial resources is unable to carry necessitating specialized counsel-process and services based on jurisdictional and actual innocence grounds warranting disclosure of documents-information in the publics interests, i.e., accountability to the rule of law on unbridled federal agents, officials and pawns.
>
> These officials have likewise influenced the divorce court proceedings, judge and attorneys to further the denial of necessary financial resources to this bogus criminal prosecution, validated further by the necessarily fishing expedition and dismissed/terminated charges.

Compl. at 10.

There is no indication that Mr. Scholl's plea agreements have been invalidated; therefore, the unambiguous Waiver Provision is legally binding and dispositive of this case. *See Patterson v. Fed. Bureau of Investigation*, No. 3:08cv186, 2008 WL 2597656, at *2 (E.D. Va. June 27, 2008) ("The use of a FOIA waiver in a valid and binding plea agreement is an enforceable provision that this Court must respect.") (citing *United States v. Lucas*, 141 Fed. App'x 169, 170 (4th Cir. 2005)).

## IV. CONCLUSION

Mr. Scholl waived his right to access the documents he now seeks under the FOIA and Privacy Act when he signed two plea agreements containing the Waiver Provision. As a result of his legally binding agreements, none of the Defendants had an obligation to disclose those records and no improper withholding has occurred. Consequently, the Court will grant summary judgment to the Defendant Agencies. A separate Order accompanies this Memorandum Opinion.

Date: September 22, 2016

                               <u>            /s/            </u>
                               ROSEMARY M. COLLYER
                               United States District Court